IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC WENNING,<br><br>    Plaintiff,<br><br>v.<br><br>RENEWABLE ENERGY GROUP, INC., JEFFREY STROBURG, RANDOLPH L. HOWARD, CYNTHIA WARNER, WALTER BERGER, JAMES C. BOREL, DELBERT CHRISTENSEN, DEBORA M. FRODL, DYLAN GLENN, PETER J. M. HARDING, NIHARIKA TASKAR RAMDEV, and CHRISTOPHER D. SORRELLS,<br><br>    Defendants. | Case No:<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Eric Wenning ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against Renewable Energy Group, Inc. ("REG" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of REG by Chevron Corporation ("Chevron").

1

2.  On March 23, 2022, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

3.  The Proxy Statement, which recommends that REG shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information regarding: (1) potential conflicts of interest involving the Company's officers and directors; (2) the sales process leading up to the Proposed Transaction; (3) potential conflicts of interest involving REG's financial advisor, Guggenheim Securities, LLC ("Guggenheim"); (4) REG's financial projections; and (5) financial analyses performed by Guggenheim in connection with its fairness opinion.

4.  These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision concerning the Proposed Transaction.

5.  Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Proposed Transaction.

## JURISDICTION AND VENUE

6.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

7.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages occurred in this District, a substantial portion of the transactions and wrongs complained

of herein had an effect in this District, the Company transacts business in this District and/or the Company is incorporated in this District.

9. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

10. Plaintiff is, and has been at all relevant times hereto, an owner of REG common stock.

11. Defendant REG provides lower carbon transportation fuels in the United States and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "REGI."

12. Defendant Jeffrey Stroburg ("Stroburg") is Chairman of the Board of the Company.

13. Defendant Randolph L. Howard ("Howard") is a director of the Company and Vice Chairman of the Board.

14. Defendant Cynthia Warner ("Warner") is President, Chief Executive Officer, and a director of the Company.

15. Defendant Walter Berger ("Berger") is a director of the Company.

16. Defendant James C. Borel ("Borel") is a director of the Company.

17. Defendant Delbert Christensen ("Christensen") is a director of the Company.

18. Defendant Debora M. Frodl ("Frodl") is a director of the Company.

19. Defendant Dylan Glenn ("Glenn") is a director of the Company.

20. Defendant Peter J.M. Harding ("Harding") is a director of the Company.

21. Defendant Niharika Taskar Ramdev ("Ramdev") is a director of the Company.

22. Defendant Christopher D. Sorrells ("Sorrells") is a director of the Company.

23. Defendants Stroburg, Howard, Warner, Berger, Borel, Christensen, Frodl, Glenn, Harding, Ramdev, and Sorrells are collectively referred to herein as the "Individual Defendants."

24. Defendants REG and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

25. On February 28, 2022, REG and Chevron issued a press release announcing the Proposed Transaction, pursuant to which Chevron will acquire REG for $61.50 per share in cash. The press release states, in pertinent part:

> **Chevron Announces Agreement to Acquire Renewable Energy Group**
>
> - **Expected to build strength and accelerate growth across renewable fuels value chain**
> - **Projected to be accretive to earnings and free cash flow**
> - **Cynthia (CJ) Warner, REG CEO, expected to join Chevron Board of Directors**
>
> February 28, 2022 07:00 AM Eastern Standard Time
>
> SAN RAMON, Calif. & AMES, Iowa--(BUSINESS WIRE)--Chevron Corporation (NYSE: CVX) and Renewable Energy Group, Inc. (NASDAQ: REGI) ("REG") announced today a definitive agreement under which Chevron will acquire the outstanding shares of REG in an all-cash transaction valued at $3.15 billion, or $61.50 per share.
>
> The acquisition combines REG's growing renewable fuels production and leading feedstock capabilities with Chevron's large manufacturing, distribution and commercial marketing position.

"REG was a founder of the renewable fuels industry and has been a leading innovator ever since," said Chevron Chairman and CEO Mike Wirth. "Together, we can grow more quickly and efficiently than either could on its own."

The transaction is expected to accelerate progress toward Chevron's goal to grow renewable fuels production capacity to 100,000 barrels per day by 2030 and brings additional feedstock supplies and pre-treatment facilities. After closing of the acquisition, Chevron's renewable fuels business, Renewable Fuels - REG, will be headquartered in Ames, Iowa. In addition, CJ Warner is expected to join Chevron's Board of Directors.

"This transaction delivers premium cash value to shareholders and will give us additional resources as we aim to accelerate growth and strengthen our collective ability to deliver the sustainable fuels our customers and the world need," said CJ Warner, REG president & CEO. "Our employees' hard work and dedication have built a fantastic renewable fuels company and made this transaction possible. We look forward to joining Chevron's team."

The transaction is expected to be accretive to Chevron earnings in the first year after closing and accretive to free cash flow after start-up of REG's Geismar expansion.

**Transaction Details**

The acquisition consideration is 100 percent cash. Total enterprise value of $2.75 billion includes a net cash position around $400 million greater than debt.

The transaction has been approved by the Boards of Directors of both companies and is expected to close in the second half of 2022. The acquisition is subject to REG shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of around 57% on a 30-day average based on closing stock prices on February 25, 2022.

**Advisors**

Goldman Sachs & Co. LLC is acting as financial advisor to Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron. Guggenheim Securities, LLC is acting as financial advisor and Latham & Watkins LLP is acting as legal advisor to REG.

**Conference Call**

Chevron will conduct a conference call on Monday, February 28, 2022, at 11:00 a.m. ET to discuss the transaction.

A webcast of the discussion will be available in a listen-only mode to individual investors, media, and other interested parties on Chevron's website at www.chevron.com under the "Investors" section, or by calling 800-822-4794 and providing the conference ID 5949818. Additional materials will be available under "Events and Presentations" in the "Investors" section on the Chevron website.

**About Chevron**

Chevron is one of the world's leading integrated energy companies. We believe affordable, reliable and ever-cleaner energy is essential to achieving a more prosperous and sustainable world. Chevron produces crude oil and natural gas; manufactures transportation fuels, lubricants, petrochemicals and additives; and develops technologies that enhance our business and the industry. We are focused on lowering the carbon intensity in our operations and seeking to grow lower carbon businesses along with our traditional business lines. More information about Chevron is available at www.chevron.com.

**About Renewable Energy Group**

Renewable Energy Group is leading the energy and transportation industries' transition to sustainability by converting renewable resources into high-quality, sustainable fuels. REG is an international producer of sustainable fuels that significantly lower greenhouse gas emissions to immediately reduce carbon impact. REG utilizes a global integrated procurement, distribution, and logistics network to operate 11 biorefineries in the U.S. and Europe. In 2020, REG produced 519 million gallons, or 1.7 million metric tons, of cleaner fuel delivering 4.2 million metric tons of carbon reduction. REG is meeting the growing global demand for lower-carbon fuels and leading the way to a more sustainable future.

B. **The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

26. As noted above, the Proxy Statement omits and/or misrepresents material information concerning: (1) potential conflicts of interest involving the Company's officers and directors; (2) the sales process leading up to the Proposed Transaction; (3) potential conflicts of interest involving Guggenheim; (4) REG's financial projections; and (5) financial analyses performed by Guggenheim.

27. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger;

(ii) Recommendation of Our Board of Directors and Reasons for the Merger; (iii) Opinion of Guggenheim Securities; and (iv) Certain Financial Projections.

28. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, REG shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Potential Conflicts of Interest Involving the Company's Officers and Directors**

29. The Proxy Statement fails to disclose all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including Defendant Warner, who, notably, was actively negotiating the Proposed Transaction as REG's Chief Executive Officer and director, and who had received several offers during the sales process to join Chevron's board after the closing of the merger.

30. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

2. **Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

32. According to the Proxy Statement, in 2020 REG entered into a confidentiality agreement with Company A. Company A had been interested in a joint venture or other strategic

7

partnership with REG, as late as December 2021.

33. The Proxy Statement, however, fails to disclose whether this confidentiality agreement contained any language that could preclude Company A from making a strategic or superior proposal to or for the Company.

34. Without this information, REG shareholders may have the mistaken belief that Company A is or was permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable REG shareholder would want to know, prior to voting their shares, whether potential buyers are or were foreclosed from submitting a strategic or superior proposal.

35. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Guggenheim's Potential Conflicts of Interest**

36. On February 9, 2022, Guggenheim provided REG "with a customary memorandum disclosing certain of Guggenheim's then-current and historical relationships with Chevron and its affiliates."

37. The Proxy Statement, however, fails to disclose the details of the "then-current and historical relationships."

38. Rather, the Proxy Statement states in the description of Guggenheim's later-dated fairness opinion that "Guggenheim Securities has not been previously engaged during the past two years by REG or Chevron to provide financial advisory or investment banking services for which Guggenheim Securities received compensation . . ." *Id*. at 50. This statement thus omits material facts that are necessary to make it not misleading since Guggenheim had "then-current" relationships with Chevron and its affiliates as of February 9, 2022.

39. Disclosure of a financial advisor's compensation and potential conflicts of interest

to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of such potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

40. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning REG's Financial Projections

41. With respect to each set of REG's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections, including, but not limited to, revenue, Adjusted EBITDA, and Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

42. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 4, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

43. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

44. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 5. Material Omissions Concerning Guggenheim's Analyses

46. The Proxy Statement fails to disclose the following concerning Guggenheim's "*Discounted Cash Flow Analysis*": (1) all line items underlying the projections used in the analysis; (2) the individual inputs and assumptions underlying the (i) range of discount rates, and (ii) perpetual growth rates; and (3) the terminal values used in the analysis.

47. The Proxy Statement fails to disclose the following concerning Guggenheim's "*Selected Precedent Merger and Acquisition Transactions Analysis*": (1) the transaction values; and (2) the closing date of each transaction.

48. With respect to Guggenheim's "*Premiums Paid in Selected Precedent Merger and Acquisition Transactions*" analysis, the Proxy Statement fails to disclose: (1) the transactions observed; and (2) the premiums paid in each transaction.

49. With respect to Guggenheim's "*Wall Street Equity Research Analyst Stock Price Targets*" analysis, the Proxy Statement fails to disclose: (1) the price targets observed; and (2) the sources thereof.

50. The valuation methods, underlying assumptions, and key inputs used by Guggenheim in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Guggenheim's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

51. Without the information described above, the Company's shareholders are unable to fully understand Guggenheim's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

52. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
## For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
## Against All Defendants

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

55. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed

11

Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

56. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

57. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

58. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

63. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's

shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 4, 2022                                    Respectfully submitted,

**FARNAN LLP**

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com
*Counsel for Plaintiff*